NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADAM IRGON, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 12-4731 (FLW) |
| THE LINCOLN NATIONAL INSURANCE COMPANY, | : MEMORANDUM OPINION |
| Defendant. | : |

**BONGIOVANNI, Magistrate Judge**

This matter has been opened to the Court upon Motion [Docket Entry No. 21] by Plaintiff Adam Irgon ("Plaintiff") seeking an Order compelling discovery from Defendant The Lincoln National Insurance Company ("Defendant"). Defendant opposes Plaintiff's motion [Docket Entry No. 22]. The Court has fully reviewed the submissions of the parties and considers same without oral argument pursuant to FED. R. CIV. P. 78. For the following reasons, Plaintiff's Motion to Compel is DENIED.

**I.   Background and Procedural History**

Plaintiff, Adam Irgon, is President and CEO of STS Consulting, which he founded in 1998. In February 2006, Plaintiff was diagnosed with Chronic Lymphoid Leukemia (CLL), "a type of cancer in which the bone marrow makes too many lymphocytes (a type of white blood cell)." *Plaintiff's Brief in Support,* Docket Entry No. 21-2, *7. In 2009, Plaintiff was approved for total disability benefits under two different plans, Defendant's and one with Principal Financial. He continues to be on total disability with Principal Financial. The underlying case relates to Plaintiff's appeal of his eligibility for disability insurance on the policy held with Defendant.

Plaintiff applied for a claim, subsequently approved by Defendant, which paid him benefits through March 2011.  In late February 2011, Plaintiff's file was reviewed by Gary P. Greenhood, M.D., who determined that Plaintiff's eligibility was no longer medically supported.  Defendant subsequently terminated Plaintiff's disability benefits

Plaintiff submitted an administrative appeal of Defendant's determination, claiming that he remained unable to work due to fatigue and propensity to develop infections.  In support, Plaintiff submitted medical records and reports of his treating oncologist, Dr. Nissenblatt, as well as a vocational analysis by Dr. Charles Kincaid, regarding Plaintiff's occupational requirements at STS.  Defendant hired an outside medical vendor, Reed Review Services (RRS), to review Plaintiff's file.  Plaintiff's file was reviewed by James Wortman, M.D. who concluded that Plaintiff was able to work and that Dr. Nissenblatt's restrictions and limitations "are not reasonable and not consistent with medical findings." *Id.* at *10.  Dr. Wortman also concluded that:

> "From evaluating and treating hundreds of patients with CLL, fatigue is a common but not debilitating issue.  Propensity to infection is always a consideration, but does not indicate that the patient needs to be in a protective environment.  A mask can easily be worn, if necessary, if someone in the office is feared of having an infection…"

*Defendant's Brief in Opposition,* Docket Entry No. 22, *7 (internal citation omitted). Based upon Dr. Wortman's recommendation, Defendant upheld its determination and again denied Plaintiff's benefits.  No Independent Medical Exam ("IME") or Functional Capacity Evaluation ("FCE") was ever conducted on Plaintiff.

Plaintiff again appealed Defendant's determination, again submitting supporting documentation from Dr. Nissenblatt. Defendant enlisted another outside medical vendor, Allmed Healthcare Management ("Allmed"), who in turn referred one Jeffery A. Bubis, D.O. to evaluate

2

the claim.  Dr. Bubis "concluded that [Plaintiff's] Eastern Cooperative Oncology Group (ECOG) performance is zero and he is 'fully active and able to carry on all pre-disease performance without restrictions.'" *Plaintiff's Brief in Support,* at *12.[1]  Dr. Bubis ultimately concluded that Plaintiff was not disabled from working.  Plaintiff was given the opportunity to respond to Dr. Bubis's assessment and provided documentation from his lawyer and further reports from Dr. Nissenblatt.  Dr. Bubis adhered to his original conclusion and Defendant upheld its original determination.  Plaintiff then brought this action in federal court on July 30, 2012 [Docket Entry No. 1] alleging violation of the Employee Retirement Income Security Act of 1974 ("ERISA").

### A.  Plaintiff's Position

Plaintiff contends that he is entitled to additional discovery for the reasons stated below.  Plaintiff wishes to conduct expanded discovery concerning (1) the appropriate standard of review. (2) structural conflicts of interest and (3) procedural irregularities.  As part of his argument, Plaintiff claims that the evidence in the administrative record shows that discovery is warranted

#### 1.  Structural Conflict

Plaintiff states that structural conflicts of interest "focus[] on the financial incentives created by the way the plan in organized." *Plaintiff's Brief in Support,* at *17.  Plaintiff claims that a conflict of interest exists here because Defendant both makes the determination as to eligibility and is the entity paying those benefits under the plan. *Id.* at *15.  Plaintiff argues that, although Defendant obtained independent medical vendors to assess Plaintiff's eligibility, Defendant's

---

[1] It appears that Plaintiff was later given an ECOG of 2 by one Dr. Furman subsequent to Dr. Bubis's report being published.  That score indicates that "the patient is 'ambulatory and capable of all self-care but unable to carry out any work activities.'" *Plaintiff's Brief in Support,* at *12.  However, it appears that such material was never produced. *Defendant's Opposition,* at *8 n.4, *Plaintiff's Reply,* at *14.

exclusive reliance on those assessments was a structural conflict which warrants discovery. To support this position, Plaintiff cites to *Howley v. Mellon Financial Corp.,* 625 F.3d 788 (2010), which held that "[t]o allow an administrator the benefit of a conflict merely because it managed to successfully keep that conflict hidden during the administrative process would be absurd." *Id.* at 793-94.

### 2. Procedural Irregularities

Plaintiff argues that, in contrast to structural conflicts, procedural irregularities "evaluate the manner in which the individual claim itself was handled by the claim administrator." *Plaintiff's Brief in Support,* at *17. Plaintiff argues that Defendant's "self-serving reliance on its own paper review experts" evidences an intent to deny Plaintiff's claim no matter what. *Id.* at *18. In addition, Plaintiff claims that the vocational analysis done by Dr. Kincaid was never given to the medical reviewers and that this omission constitutes a procedural irregularity and evidences an intent by Defendants to avoid considering Plaintiff's "actual job requirements as the President and CEO of STS and to instead characterize his occupation as merely 'sedentary'." *Id.* Moreover, Plaintiff claims that Defendant failed to conduct any vocational analysis of its own which would have determined if Plaintiff could perform the functions of his job. Plaintiff further claims that at no time did the reviewing experts attempt to contact Plaintiff's treating oncologist, Dr. Nissenblatt, even though contact information was given for him. *Id.* Plaintiff also notes that it appears that at least one person was used in denying both of Plaintiff's administrative appeals. *Id.* at *19. Lastly, Plaintiff notes that no IME or FCE was ever conducted to evaluate Plaintiff's condition. *Id.* at

Finally, Plaintiff claims that Defendant improperly failed "to assess whether the Plaintiff qualifies for residual (partial) disability benefits under the terms of the said policy." *Id.* at 20.

4

Plaintiff argues that, as a fiduciary, Defendant "was obligated to explore all avenues of recovery for the Plaintiff, including the possibility that he could not return to work *full* time, but might be able to work *part* time[.]" *Id.* (emphasis in the original).   Plaintiff argues that this failure evidences a lack of good faith and therefore, a procedural irregularity.

### B. Defendant's Position

Defendants assert that they have complied with applicable law and that Plaintiff has not established any valid reason which entitles him to the discovery he seeks.   Defendants argue that Plaintiff has not set forth any evidence of conflicts of interest or procedural irregularities which would entitle Plaintiff to additional discovery. Additionally, Defendant argues that, even if the Court were inclined to grant discovery, the requests made by Plaintiff are overbroad and burdensome.

### 1. Structural Conflict

Defendants argue that structural conflicts and procedural irregularities are "simply factors in determining whether an administrator has abused its discretion." *Defendant's Opposition,* at *13.   Further, Defendant claims that there is no such conflict or irregularity present in this matter which would warrant discovery beyond the administrative record.   In support, Defendant provides the Affidavit of Barbara True ("True Aff."), Assistant Vice President for Lincoln's Group Protection – Claims Solutions organization. *True Aff.* ¶1.   In the affidavit, Ms. True provides "information explaining the efforts [taken] to promote accurate decision-making and [to] reduce the purported effects of so-called structural conflicts." *Defendant's Opposition,* at *13.

As to Plaintiff's discovery topics – standard of review, structural conflicts and procedural irregularities – Defendant argues that no discovery is warranted.   Defendant claims that because

5

discretion was granted to it under the policy, the only possible standard of review is arbitrary and capricious. *Id.* at *14.  As to any structural conflict, Defendant claims that the True Affidavit states that it has taken numerous steps to promote accuracy. Defendant claims that it "does not compensate or otherwise reward employees for denying claims." *Id.*  Furthermore, "it has 'walled-off' its claims decision-makers from the financial and underwriting departments." *Id.* Defendant also notes that it allows two independent appeals instead of the required one. *Id.*

### 2. Procedural Irregularities

Defendant argues that there are no procedural irregularities in this case which justify expanded discovery.  Defendant states that its medical vendors are independent and "appropriately credentialed[.]" *Id.*  Defendant further states that it contracts with several vendors "so that no one particular vendor receives a disproportionate number of referrals" and that different vendors are used "for different stages of the claims/appellate process with respect to a given claim." *Id.* at *15.  Furthermore, Defendant notes that the vendors do not have any authority to make benefits determinations and that compensation "in no way depends on the outcome of the review." *Id.*  Defendant argues that these facts promote accuracy and do not indicate any misconduct.

As to the reliance on non-treating physicians over treating physicians, Defendant argues that the Supreme Court held that courts may not require administrators to automatically weigh a treating physician's opinion over a non-treating physician's opinion. *Id.* at *16, citing *Black & Decker Disability Plan v. Nord,* 538 U.S. 822 (2003).  In response to Plaintiff's argument that he should have been physically examined, Defendant argues that in this case it would not have been helpful because "Plaintiff's claim of disability was based on fatigue and alleged restriction from

6

human contact[.]" *Id.* at *17.

Defendant additionally rebuts Plaintiff's contention that it did not consider Dr. Kincaid's vocational analysis, nor did it conduct one of its own. Defendant argues that Dr. Kincaid is not a medical expert and that the "report contained no medical information that would be important for consulting physicians to review." *Id.* at *18 (emphasis omitted). Moreover, Defendant contends that it did perform an analysis of Plaintiff's occupation and excerpts same in its brief.

As to Plaintiff's argument that Defendant failed to conduct any analysis regarding partial disability benefits, Defendant states that "[Plaintiff], fully represented by counsel, never claimed to be partially disabled. Moreover, in order to be entitled to such benefits, a claimant must actually be 'working at his or her own occupation or any another (*sic*) occupation.'" *Id.* at *19 (internal citation omitted). Defendant argues that Plaintiff never contended that he was actually working, and therefore, would not be entitled to partial disability benefits anyway.

Finally, Defendant contends that Plaintiff's discovery requests are overbroad and irrelevant. Defendant claims that it has already explained itself with respect to the information sought, and notes that much of the information would have be to subject to a confidentiality agreement. *Id.* at *20. Further, as to information Plaintiff seeks regarding the reviewing physicians, Defendant reiterates that the claim determinations are not made by those physicians, and that the determinations are made "on the entirety of the record" and therefore, "the conclusions of any given physician(s) as reflected over time would have no true statistical value." *Id.*

### C. Plaintiff's Reply

#### 1. Standard of Review

Plaintiff argues that in order to have an arbitrary and capricious standard of review, it must

prove "(1) that its plan contains adequate discretionary language; and (2) that such discretion was actually transmitted to it by the plan's sponsor." *Plaintiff's Reply Brief,* Docket Entry No. 24, *6. Plaintiff claims that neither factor can be proven by the administrative record and therefore, discovery is warranted.

### 2. Structural Conflict

Plaintiff takes issue with Defendant's use of the True Affidavit and characterizes it as "self-serving" and "outside-the-record". *Id.* at *8. Plaintiff claims that the introduction of the affidavit raises questions about whether Defendant is attempting to unilaterally expand the record, and also questions as to why Ms. True was the one to make the declaration. Plaintiff claims that Ms. True's assertions are not supported or explained by additional documentation and that even if the declaration in its entirety was taken as true "it hardly provides a basis to conclude that no further inquiry into the admitted structural conflict of interest is warranted." *Id.* at *10. Furthermore, Plaintiff cites recent case law from the Central District of California holding that such a declaration was rejected from consideration. *See Mondolo v. Unum Life Insurance Company of America,* CV11-7435 (CAS)(MRW). Finally, Plaintiff contends that if the True Declaration is to be considered, the Declaration itself should be the subject of discovery. *Id.* at *12.

### 3. Procedural Irregularities

Plaintiff notes that Defendant did not deny that it failed to provide the reviewing physicians with Dr. Kincaid's report, but only that it did not believe it had to do so. Plaintiff characterizes this as a "glaring procedural irregularity[.]" *Id.* Furthermore, in Defendant's own report, Plaintiff argues that Defendant did not consider "the true requirements of Plaintiff's occupation" and "instead created a 'sedentary' job description[.]" *Id.* In this regard, Plaintiff contends that

8

Defendant was not proceeding in its capacity as a fiduciary and that discovery is warranted as a result.

Plaintiff additionally contends that even "though the claim administrator is not required to defer to the opinions of a claimant's treating physician, unreasonable reliance on the findings of paper reviewers, and summary dismissal of the opinions of treating physicians, is an abuse of discretion and is evidence of procedural irregularity in the claims process." *Id.* at 15-16.

Finally, Plaintiff submits that its discovery requests are narrowly tailored to areas where a conflict of interest is most likely to be present.   Plaintiff notes that he is unaware of the information being withheld by Defendant and therefore, has done his best to define those specific areas. *Id.* at *17.

## II.   Analysis

### A.   Standard of Review

The U.S. Supreme Court has held that a denial of ERISA benefits is to be reviewed *de novo* unless the terms of the benefit plan give an administrator or fiduciary discretionary authority to determine eligibility or construe terms of the plan. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). In cases governed by the Employment Retirement Income Security Act ("ERISA") where the plan affords the administrator discretionary authority, the administrator's interpretation of the plan "will not be dismissed if reasonable." *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 (3d. Cir. 1997) (*quoting Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989). In other words, when a plan administrator has discretion to determine a claimant's eligibility for benefits, the plan administrator's decision is subject to review under an arbitrary and capricious standard. *Doroshow v. Hartford Life and Acc. Ins. Co.*, 574 F.3d 230, 233 (3d Cir.

9

2009). Under the arbitrary and capricious standard, the claim determination will be upheld if it is supported by substantial evidence. *Doroshow*, 574 F.3d at 234 ("Under a traditional arbitrary and capricious review, a court can overturn the decision of the plan administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law").

Typically in ERISA cases in which the arbitrary and capricious standard of review is used, the Court limits its review of the plan administrator's denial of benefits to only that evidence that was before the administrator when he or she made the decision being reviewed. *See Mitchell,* 113 F.3d at 440 (finding that under an arbitrary and capricious standard of review, the court looks to the record as a whole, and that "whole" record consists of evidence that was before administrator when the decision being reviewed was made); *see also Johnson v. UMWA Heath and Ret. Funds*, 125 Fed. Appx. 400, 405 (3d Cir. 2005) (finding that "record for arbitrary and capricious review of ERISA benefits denial is record made before the plan administrator which cannot be supplemented during litigation"). However, the Court notes that "when a reviewing court is deciding whether to employ the arbitrary and capricious standard or a more heightened standard of review, it may consider evidence of potential biases and conflicts of interest that are not found in the administrator's record." *Johnson*, 125 Fed. Appx. at 405-06. The type of evidence considered by courts focuses on whether a heightened standard of review is required either because there is a question regarding whether a structural conflict of interest exists (i.e. is the entity making benefits determinations also financially interested in those determinations) or because the administrative record is overwrought with procedural anomalies. *See, generally, Kosiba v. Merck & Co.*, 384 F.3d 58, 64-67 (3d Cir. 2004); *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 393-95 (3d Cir. 2000). Therefore, discovery will typically not be permitted beyond the administrative record in

ERISA cases unless some extrinsic factor exists, such as a structural conflict of interest or significant procedural anomalies.

The Court finds that discovery regarding the standard of review to be applied in this matter is not warranted. First, the Court notes that Plaintiff improperly argued for discovery with respect to standard of review in its reply papers, rather than its moving papers. Second, assuming *arguendo* that Plaintiff did properly argue the issue in its moving papers, the Court finds that the information contained in the administrative record is sufficient to determine which standard applies.

### B. Structural Conflict of Interest

The Supreme Court in *Glenn* altered the way in which a conflict of interest is handled by the courts. *Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2348 (2008). Previously, a finding of a conflict of interest resulted in the heightening of the arbitrary and capricious standard along a sliding scale, taking into account several factors including, the "sophistication of the parties, the information accessible to the parties, the exact financial arrangement between the insurer and the company; and the status of the fiduciary, as the company's financial or structural deterioration might negatively impact the presumed desire to maintain employee satisfaction." *Stratton v. E.I. Dupont de Nemours & Co.*, 363 F.3d 250, 254 (3d Cir. 2004) (internal quotations omitted). *Glenn* rejected heightening the arbitrary and capricious standard. In *Glenn*, the Supreme Court reasoned that *Firestone* held that the word "factor" implies that courts should review the propriety of benefit denials, by taking into account many factors, including a conflict of interest. *Glenn*, 128 S.Ct. at 2351 (discussing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). Effectively, the Court reaffirmed *Firestone* to the extent that deference should be

11

given to "the lion's share of ERISA claims." *Id.* at 2350.  The Court opined that the conflict of interest may be more important in circumstances "suggesting a higher likelihood that it affected the benefits decision," and would prove less important "when the administrator has taken active steps to reduce potential bias." *Id.* at 2351. Potential bias could be reduced "by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decision making irrespective of whom the inaccuracy benefits." *Id.*  In any event, the governing standard requires Plaintiff to show that the denial of benefits was arbitrary and capricious, with a conflict of interest as simply one factor for the court's consideration. *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525 (3d. Cir. 2009); *see also Howley v. Mellon Financial Corp.*,No. 08-1748, 2010 WL 3397456, at *4 (3d Cir. Aug. 31, 2010)

A conflict of interest can be created, for example, when an employer both funds and evaluates employee claims. *Glenn*, 128 S.Ct. at 2348.  A conflict of interest can also be created if an employer pays an independent insurance company to both evaluate claims and pay plan benefits. *Id.* at 2349; *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 383 (3d Cir. 2000). However, a conflict of interest is not present if an employer funds a benefits plan, but an independent third party is paid to administer the plan.  *Pinto*, 214 F.3d at 383. Additionally, if an employer establishes a plan and creates an internal benefits committee vested with the discretion to interpret the plan and administer benefits, a conflict of interest does not exist. *Id.*; *see also Post v. Hartford Ins. Co.*, 501 F.3d 154, 164 n. 6 (3d Cir. 2007).

In this case, Defendant was retained by STS to both evaluate and pay disability benefits. While this in itself can create a conflict of interest, as delineated in *Glenn,* such a conflict is only one factor among many for the Court to consider.  Indeed, Defendant hired a different medical

12

vendor each time to evaluate Plaintiff's claim. Therefore, though Defendant made the ultimate claim determination, it was based soundly upon the opinions of the medical vendors' reviewing physicians. Furthermore, the fact that Defendant relied on the reviewing physicians' opinions is not in itself evidence of a structural conflict and indeed, is explicitly permitted by the Supreme Court in *Nord. See Black & Decker Disability Plan v. Nord,* 538 U.S. 822 (2003).

Further, the Court notes that discovery beyond the administrative record would be unnecessary because a conflict of interest should be considered only as "a factor in determining whether Defendants abused its discretion in denying Plaintiff's benefits." *Glenn*, 128 S.Ct. at 2346; *see also Magera v. The Lincoln National Life Insurance Company*, 2009 WL 260993 at *6 (M.D. Pa. Feb. 4, 2009). Therefore, because the Court can determine whether a conflict of interest exists based on documents in the administrative record, and because the finding of conflict of interest would not alter the rule that the entire record consists of the evidence in front of the administrator when making the decision under review, the Court denies Plaintiff's motion to compel discovery beyond the administrative record. *See Zurawel v. Long Term Disability Income Plan For Choices Eligible Employees of Johnson and Johnson*, Civil Action No. 07-5973, 2010 WL 3862543 (D.N.J. Sept. 27, 2010).

    **C.  Procedural Irregularities**

As with the existence of a conflict of interest, the existence of procedural abnormalities could open the door to discovery beyond the administrative record and a court may "consider evidence of potential biases and conflicts of interest that is not found in the administrator's record." *Howley v. Mellon Financial Corp.*, 625 F.3d 788, 793-94 (C.A.3 N.J. 2010) (*quoting Kosiba v. Merck & Co.*, 384 F.3d 58, 67 n. 5 (3d Cir.2004); *see also Burke v. Pitney Bowes Inc. Long-Term*

*Disability Plan*, 544 F.3d 1016, 1028 (9th Cir.2008) ("[T]he district court may consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest.") (internal quotation marks omitted).   However, given the Supreme Court's holding in *Glenn*, evidence of procedural abnormalities, or some other bias, is to be considered as a factor in determining whether an administrator's denial of benefits was arbitrary and capricious in the same way that the existence of a conflict of interest is to be considered as a factor.   As this Court has held before, the existence of procedural abnormalities is not an automatic trigger permitting discovery beyond the administrative record. *See Shvartsman,* 2012 U.S. Dist. LEXIS 80328 and *Muccino,* 2012 U.S. Dist. LEXIS 80327.

Further, procedural abnormalities are determined by a review of the administrative record. *See Zurawel*, 2010 WL 3862543.   *Delso* requires that a "reasonable suspicion of misconduct" exist before permitting expanded discovery.   Plaintiff has pointed to the lack of consideration of Dr. Kincaid's report; the lack of an IME or FCE being conducted upon Plaintiff; the lack of any correspondence between the reviewing physicians and Plaintiff's oncologist; and the presence of the same person during each determination of Plaintiff's eligibility as procedural irregularities. While the above omissions, standing alone, appear to be somewhat troubling, the Court finds that Defendant's claim determination was adequately supported by the reports submitted by Plaintiff's treating oncologist, Dr. Nissenblatt. Defendant, as well as the reviewing physicians, pulled text directly from Dr. Nissenblatt's reports in coming to a determination on Plaintiff's eligibility. Therefore, the Court finds that Plaintiff's arguments do not rise to the level which require discovery beyond the administrative record.

### III. Conclusion

For the reasons set forth above, the Court finds that discovery beyond that which is in the administrative record is not warranted. As a result, Plaintiff's motion is DENIED. An appropriate order follows.

Dated: April 2, 2013

                                                        s/ Tonianne J. Bongiovanni
                                           **TONIANNE J. BONGIOVANNI**
                                           **United States Magistrate Judge**