***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADAM IRGON, | Civil Action No.: 13-4731 (FLW) |
| Plaintiff, | |
| v. | **OPINION** |
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, | |
| Defendant. | |

Plaintiff Adam Irgon ("Plaintiff") appeals the Magistrate Judge's Order, dated April 2, 2013 (the "April 2 Order"), denying Plaintiff's motion to compel extra-record discovery. This action stems from a denial of the continuation of long term disability ("LTD") benefits by Defendant the Lincoln National Life Insurance Company ("Defendant" or "Lincoln"), allegedly in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff contends that the Magistrate Judge's rulings are clearly erroneous. For the reasons that follow, the Court **AFFIRMS** the Magistrate Judge's April 2 Order.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are not disputed. Plaintiff was the President and CEO of STS Consulting ("STS"), which he founded in 1998. In February 2006, Plaintiff was diagnosed with Chronic Lymphoid Leukemia ("CLL"). In 2009, Plaintiff was approved for total disability benefits under two different plans- one through STS and another through Principal Financial. To date, he continues to receive total disability benefits from Principal Financial. The underlying dispute relates to Plaintiff's appeal of his eligibility for disability benefits on the STS policy,

which is administered by Lincoln.

Initially, Lincoln paid disability benefits to Plaintiff through March 2011. In late February 2011, Plaintiff's file was reviewed by Gary P. Greenhood, M.D., employed by Defendant, who determined that Plaintiff's eligibility to receive benefits was no longer medically supported. Pursuant to Dr. Greenhood's recommendation, Defendant terminated Plaintiff's disability benefits.

Thereafter, Plaintiff submitted an administrative appeal of Defendant's decision, claiming that he remained unable to work due to fatigue and propensity to develop infections. For support, Plaintiff submitted medical records and reports of his treating oncologist, Dr. Nissenblatt, as well as a vocational analysis by Dr. Charles Kincaid regarding Plaintiff's occupational requirements at STS. On appeal, Defendant hired an outside medical vendor, Reed Review Services ("RRS"), to review Plaintiff's file; that review was conducted by James Wortman, M.D. Relying on Plaintiff's medical records from his treating physician, Dr. Wortman concluded that Plaintiff was able to work. Based upon Dr. Wortman's recommendation, Defendant upheld its decision and, again, denied Plaintiff's benefits. No Independent Medical Exam ("IME") or Functional Capacity Evaluation ("FCE") was conducted on Plaintiff.

Defendant afforded Plaintiff another level of review. This time, Lincoln hired another outside medical vendor, Allmed Healthcare Management ("Allmed"), which in turn referred the matter to Jeffery A. Bubis, D.O. to evaluate the claim. Dr. Bubis conducted a medical records review, did not examine Plaintiff, and ultimately concluded that Plaintiff was not disabled from working. Plaintiff was given the opportunity to respond to Dr. Bubis's assessment, and Plaintiff provided further documentation from his lawyer and Dr. Nissenblatt. However, Dr. Bubis did not change his opinion, and as a result, Defendant upheld its original decision to deny Plaintiff's

benefits. Plaintiff then brought this action on July 30, 2012, alleging that Defendant's decision to deny him LTD benefits violated ERISA.

Before the Magistrate Judge, Plaintiff filed a motion to compel discovery based upon (1) the appropriate standard of review; (2) structural conflicts of interest; and (3) procedural irregularities. Regarding standard review, Plaintiff insists that while the STS Plan provides discretion to Lincoln to administer the plan, discovery relating to the conveyance by STS of such discretion is necessary. As to the conflict of interest, Plaintiff claims that because Defendant both evaluates claims and pays benefits, conflict of interest is apparent, and discovery is appropriate on that issue. Finally, Plaintiff raises several alleged procedural irregularities which include: Defendant's reliance on its own reviewing experts over Plaintiff's treating physician; a lack of consideration given to the vocational analysis performed by Dr. Kincaid and failure by Defendant to conduct its own vocational analysis; a lack of communication between the reviewing physicians and the treating physician; the presence of the same person during the first and second levels of appeals; the failure to conduct an IME and FCE; and Defendant's failure to assess whether Plaintiff qualified for partial disability benefits. Based on those so-called irregularities, Plaintiff maintains that discovery is necessary.

The Magistrate Judge denied Plaintiff's motion for discovery. In denying the Motion, the Magistrate Judge noted that Plaintiff improperly argued for discovery with respect to the standard of review in his reply papers rather than in his moving papers. Regardless, the Magistrate Judge found that the information in the administrative record is sufficient to determine which standard applies, and thus, discovery beyond the record is unnecessary. The Magistrate Judge also determined that the existence of a conflict of interest can be adequately determined by the Administrative Record, and that there is no "reasonable suspicion of

misconduct" created by the alleged procedural irregularities that would require additional discovery. As a result, the Magistrate Judge denied the Motion to compel discovery. The instant appeal ensued.

## II. STANDARD OF REVIEW

A United States Magistrate Judge may hear and determine any non-dispositive pretrial matter pursuant to 28 U.S.C. § 636(b)(1)(A). To that end, a district court will only reverse a magistrate judge's decision on these matters if it is contrary to law or clearly erroneous. Id.; Fed. R. Civ. P. 72(a). "The party filing the notice of appeal bears the burden of demonstrating that the magistrate judge's decision was clearly erroneous or contrary to law." Marks v. Struble, 347 F.Supp.2d 136, 149 (D.N.J. 2004). A ruling is "contrary to law" when the magistrate judge has misinterpreted or misapplied the applicable law. Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc., 106 F.Supp.2d 761, 764 (D.N.J.2000). A finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (citing United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). Under this standard, "a district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review." Andrews v. Goodyear Tire & Rubber Co., Inc., 191 F.R.D. 59, 68 (D.N.J.2000). A district court will not reverse a magistrate judge's finding even "in circumstances where the [reviewing] court might have decided the matter differently." Bowen v. Parking Auth. of City of Camden, No. 00–5765, 2002 WL 1754493 (D.N.J. July 30, 2002).

Where an appeal seeks review of a matter within the purview of the magistrate judge, such as a discovery dispute, an even more deferential standard, the "abuse of discretion

standard", must be applied. Kounelis v. Sherrer, 529 F.Supp.2d 503, 518 (D.N.J. 2008) ("[w]here a magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of discretion."); see also Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 138 (3d Cir. 2000) (discovery orders reviewed for abuse of discretion). An abuse of discretion occurs "when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp., 540 F.2d 102, 115 (3d Cir.1976). Here, there is no dispute by the parties that the Magistrate Judge's decision is reviewed under the clearly erroneous standard.

## III. DISCUSSION

### 1. Discovery in the context of ERISA

Generally, pursuant to Fed. R. Civ. P. 26(b)(1), "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Courts may refuse to order discovery if the information sought is (1) irrelevant to the claim or (2) protected by a recognized privilege. See Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000). Moreover, Rule 26(b)(2) prevents, among other things, overly burdensome discovery requests, discovery of cumulative materials, and overly costly discovery requests. See Fed. R. Civ. P. 26(b)(2)(C).

Cases arising under ERISA are generally reviewed de novo, or under the arbitrary and capricious standard of review. Under de novo review, courts may consider "supplemental evidence" and are "not limited to the evidence before… the administrator." See Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 418 (3d Cir. 2011). Under the arbitrary and capricious standard of

5

review, courts must limit their review of the plan administrator's denial of benefits to only the evidence that was before the administrator when the decision was made. See Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d. Cir.1997) (finding that under an arbitrary and capricious standard of review, the court looks to the record as a whole, and that "whole" record consists of evidence that was before administrator when the decision being reviewed was made). However, this limitation refers to the merits of the administrator's decision. This general restriction does not prohibit a district court from considering extra-record materials related to an administrator's conflict of interest or any procedural irregularities that occurred during the reviewing process. See Otto v. W. Pa. Teamsters and Employers Pension Fund, 127 Fed. App'x 17, 21 n. 7 (3d Cir. 2005) (stating "[e]vidence beyond the administrative record may in certain circumstances be relevant and admissible as to issues . . . such as trustee conflict of interest, bias, or a pattern of inconsistent benefit decisions"); O'Malley v. Sun Life Ins. Co. of Am., No. 04-5540, 2006 WL 182099, at *7 (D.N.J. Jan. 23, 2006) (stating "this Court may consider evidence [beyond the administrative record] of a pattern of inconsistent benefit decisions by Defendant ...").

In the context of bias, conflict of interest or procedural irregularities, discovery under the arbitrary and capricious standard of review in an ERISA case is governed by Fed. R. Civ. P. 26(b). See Evans v. Employee Benefit Plan, No. 03-4915, 2006 WL 1644818, at *4 (D.N.J. Jun. 6, 2006); Stepanski v. Sun Microsystems, Inc., No. 10-2700, 2011 WL 8990579, at *18 (D.N.J. Dec. 9, 2011); Sivalingam v. Unum Provident Corp., 735 F. Supp. 2d 189, 193 n.3 (E.D. Pa. 2010); Murphy v. Deloitte & Touche Group Ins. Plan, 619 F.3d 1151, 1162 (10th Cir. 2010). In that regard, it is important to bear in mind that discovery in the ERISA context is limited by the statute's goal of a speedy, inexpensive, and efficient resolution of claims. See Delso v. Trustees

6

of Ret. Plan for Hourly Employees of Merck & Co., Inc., No. 04-3009, 2006 WL 3000199 (D.N.J. Oct. 20, 2006). To achieve such goals, courts have considerable latitude in deciding whether discovery outside the scope of the administrative record is appropriate.

**2. Standard of Review**

The Supreme Court has long held that a denial of benefits under ERISA is to be reviewed "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Thus, where the plan affords the administrator discretionary authority, the administrator's interpretation of the plan "will not be dismissed if reasonable." See Mitchell, 113 F.3d at 437 (quoting Firestone, 489 U.S. at 111). In other words, when a plan administrator has discretion to determine a claimant's eligibility for benefits, the plan administrator's decision is subject to review under an arbitrary and capricious standard. Doroshow v. Hartford Life and Acc. Ins. Co., 574 F.3d 230, 233 (3d Cir. 2009).

Plaintiff argues that the Magistrate Judge erred in denying discovery regarding the appropriate standard of review. While there is no dispute that the plan provided Defendant the discretion to administer the plan, Plaintiff, nevertheless, argues that additional discovery is necessary because proper conveyance, or transmission, of discretion by the plan sponsor to Defendant has not been established. However, it is well-settled that "[i]f the plan gives the administrator or fiduciary discretionary authority to make eligibility determinations, [courts] review [the plan's] discretion under an abuse-of-discretion (or arbitrary and capricious) standard." Viera, 642 F.3d at 413 (citing Glenn, 554 U.S. at 111; Doroshow, 574 F.3d at 233). Other than Plaintiff's speculation that Lincoln might not have been given the proper discretion, which is contrary to the plain terms of the plan, Plaintiff has not advanced any basis for his

7

conclusion. As a result, discovery in this context was appropriately denied, and I find that the Magistrate Judge's decision denying discovery into the standard of review was not clearly erroneous or contrary to law.

### 3. Conflict of Interest

In determining whether the denial of benefits was arbitrary and capricious, courts review "various procedural factors underlying the administrator's decision-making process, as well as structural concerns regarding how the particular ERISA plan was funded." Miller v. Am. Airlines, Inc., 632 F.3d 837, 845 (3d Cir. 2011). "The structural inquiry focuses on the financial incentives created by the way the plan is organized," i.e., whether there is a conflict of interest, and "the procedural inquiry focuses on how the administrator treated the particular claimant." Post v. Hartford Ins. Co., 501 F.3d 154, 162 (3d Cir. 2007).

With regard to the structural inquiry, a conflict of interest can be created, for example, when an employer both funds and evaluates employee claims. Glenn, 554 U.S. 128 (2008). A conflict of interest can also be created if an employer pays an independent insurance company to both evaluate claims and pay plan benefits. Id. at 113-14; Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 383 (3d Cir.2000). However, a conflict of interest is not present if an employer funds a benefits plan, but an independent third party is paid to administer the plan. Id. at 383. Additionally, if an employer establishes a plan and creates an internal benefits committee vested with the discretion to interpret the plan and administer benefits, a conflict of interest does not exist. Id.; Post, 501 F.3d at 164 n. 6.

With respect to discovery beyond the Administrative Record into an alleged conflict of interest, discovery may be necessary where the record reveals a lack of thoroughness on the part of the administrator. See Murphy, 619 F.3d at 1164. However, a plaintiff must establish a

8

reasonable suspicion of misconduct before the court permits discovery. Delso, 2006 WL 3000199, at *3. In other words, a plaintiff must allege a good faith basis of conflict of interest to warrant discovery. See Killian v. Johnson & Johnson, No. 07-4902, 2009 WL 537666 (D.N.J. Mar. 4, 2009). After assessing whether a plaintiff has a good faith basis, the court must then determine whether discovery would aid in evaluating the alleged conflict. Delso, 2006 WL 3000199, at *4. However, a court need not grant discovery beyond the administrative record where the substantive evidence supporting the denial of a claim is so one-sided that the result would not change even after giving full weight to an alleged conflict, or if the effect of a conflict may be evaluated by examining the thoroughness of the administrator's review, which can be based on the administrative record. See Murphy, 619 F.3d at 1164.

Plaintiff argues that because Defendant both evaluates claims and pays benefits,[1] he is entitled to extra-record discovery. In that connection, Plaintiff cites Howley v. Mellon Financial Corp., 625 F.3d 788 (3d Cir. 2010), and argues that where there is a structural conflict of interest, a plaintiff must be permitted to inquire about the impact of such conflict. However, as Defendant correctly points out, Howley does not give plaintiffs carte blanche to seek conflict of interest discovery beyond the Administrative Record. Instead, the Third Circuit in Howley simply rejected a categorical bar from consideration of evidence outside of the record. Howley, 625 F.3d 794 ("[a] court may certainly consider evidence of potential biases and conflicts of

---

[1] Plaintiff also takes issue with Defendant's submission of the Declaration of Barbara True, Lincoln's Assistant Vice-President, and certain professional service agreements. According to Defendant, this evidence explains the measures Defendant took to mitigate the effect of any potential conflict of interest. Plaintiff claims that the Magistrate Judge improperly considered the extra-record evidence in denying discovery. However, while the Magistrate Judge referenced Ms. True's Declaration, the Magistrate Judge's decision was not based upon the extra-record materials submitted by Defendant. Indeed, the Magistrate Judge emphasized that whether a conflict of interest exists can properly be determined by solely relying on the Administrative Record. Moreover, this Court does not rely on Ms. True's Declaration on this appeal.

9

interest that is not found in the administrator's record.").

In this case, the Magistrate Judge concluded that extra-record discovery on conflict of interest was unnecessary. Indeed, the Magistrate Judge acknowledged that Defendant was retained by STS to both evaluate and pay disability benefits, and that determination was made by solely reviewing the Administrative Record. In order to permit Plaintiff additional discovery based on that conflict, Plaintiff must identify a reasonable suspicion that the conflict of interest somehow impacted Defendant's final decision of denial. However, beyond raising the fact of a conflict as an issue, Plaintiff has not articulated any additional bases for discovery. Additionally, to the extent Plaintiff believes there are other conflicts of interest, he has not articulated any basis for his suspicion. Thus, Plaintiff's discovery request was appropriately denied.

### 4. Procedural Irregularities

As discussed above, the process by which the administrator arrived at its decision can also be a factor impacting the decision's propriety. The focus of the inquiry is on how the administrator treated the particular claimant. Post v. Hartford Ins. Co., 501 F.3d 154, 162 (3d Cir. 2007). Specifically, courts consider procedural irregularities to determine "whether, in this claimant's case, the administrator has given the court reason to doubt its fiduciary neutrality." Id. at 165 (internal citations omitted). These procedural irregularities may include, inter alia: (1) a reversal of a benefits determination without additional evidence, (2) a disregard of opinions previously relied upon, (3) a self-serving selectivity in the use of evidence or reliance on self-serving paper reviews of medical files, (4) a reliance on the opinions of non-treating physicians over treating physicians without explanation, (5) a reliance on inadequate information or incomplete investigation, (6) failure to comply with the notice requirements of Section 504 of ERISA, (7) failure to analyze all relevant diagnoses, and (8) failure to consider plaintiff's ability

to perform actual job requirements. See Miller, 632 F.3d at 848-55; Lamanna v. Special Agents Mut. Benefits Ass'n, 546 F.Supp.2d 261, 287 (W.D.Pa 2008).

As stated above, district courts are not prohibited from considering extra-record materials relating to procedural irregularities. However, "[a] dispute with the merits of the decision, without evidence of procedural bias or irregularity, does not suffice for the purposes of granting discovery." Mainieri v. Bd. of Trustees of Operating Eng'r's Local 825 Pension Fund, No. 07-1133, 2008 WL 4224924, at *3 (D.N.J. Sept. 10, 2008). Rather, a plaintiff must first identify a reasonable suspicion of misconduct before permitting expanded discovery. Delso, 2006 WL 3000199, at *4.

In this case, Plaintiff argues that the Magistrate Judge improperly denied discovery on procedural irregularities. Specifically, Plaintiff maintains that the Magistrate Judge, despite acknowledging the "troubling" nature of certain actions by the Defendant -- i.e., a lack of consideration given to Dr. Kincaid's report; a lack of an IME or FCE conducted on Plaintiff; a lack of correspondence between the reviewing physicians and Plaintiff's oncologist; and the presence of the same person during each determination of Plaintiff's eligibility – nevertheless, erroneously found that the decision to terminate benefits was proper because Defendant's decision was based on the medical records of Plaintiff's treating oncologist. Plaintiff claims that this was a determination on the ultimate merits of the case, and thus exceeded the scope of the discovery motion. Defendant counters that Plaintiff's allegations relate to the merits of the LTD benefits decision rather than to any procedural irregularities, and moreover, that Plaintiff did not meet his burden of pointing to evidence in the Administrative Record that would amount to a reasonable suspicion of misconduct to justify further discovery. As a result, Defendant contends, the denial of extra-record discovery was appropriate.

11

With respect to Plaintiff's assertions that there was a lack of consideration given to Dr. Kincaid's report, a lack of an IME or FCE conducted on Plaintiff, and that the reviewing physicians failed to communicate with Plaintiff's oncologist, these issues are related to the actual merits of whether Defendant's decision to deny LTD benefits was arbitrary and capricious, rather than indications of any irregularities. Therefore, the Magistrate Judge's decision denying discovery was not clearly erroneous. Of course, Plaintiff may raise these issues to challenge the merits of Defendant's denial at a later stage in this litigation.

Plaintiff also asserts that Defendant utilized the same person, Elaine Conley, in conducting both levels of review during the administrative appeal. In that regard, however, while Plaintiff suggests that Ms. Conley participated in both levels of appeal, Plaintiff simply failes to raise any reasonable suspicion why her participation would present an irregularity or somehow tainted Defendant's decision. In fact, according to Defendant, and not contested Plaintiff, Ms. Conley did not "conduct" either appeal. Therefore, Plaintiff's assertion does not raise a reasonable suspicion of misconduct.

For the foregoing reasons, I find that the Magistrate Judge's decision denying discovery was not clearly erroneous or contrary to law.[2]

---

[2] As a final note, the Magistrate Judge, in denying discovery relating to procedural irregularities, found that "Defendant's claim determination was adequately supported by the reports submitted by Plaintiff's treating oncologist, Dr. Nissenblatt, as well as the reviewing physicians . . . ." Opinion dated April 2, 2013, p. 14. Plaintiff takes issue with that language because, he argues, the Magistrate Judge improperly made a merit determination as to whether Defendant's decision to deny benefits was proper. Whether the Magistrate Judge's language was ill-chosen or not, nonetheless, this issue is still pending for this Court's determination at a later stage.

## IV. CONCLUSION

For the foregoing reasons, the Court affirms the Magistrate Judge's Order denying discovery beyond the Administrative Record. An Order will be entered consistent with this Opinion.


Dated: November 14, 2013                    /s/    Freda L. Wolfson
                                            Freda L. Wolfson, U.S.D.J.